IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES A. ATKINSON, ) | Civil Action No. 3:06-1704-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

In August 2003, Plaintiff applied for SSI. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held November 9, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 16, 2006, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-two years old at the time of the ALJ's decision. He has a high school education and before 1988 worked as an assembly worker, floor scrubber and cleaner, tool grinder, and dye range operator. Plaintiff alleges disability since December 4, 2003, due to a speech impairment, perforated palate, depression, anxiety, coronary artery disease, and respiratory problems.

The ALJ found (Tr. 21-22):

1. The claimant has not engaged in substantial gainful activity since his amended alleged disability onset date of December 4, 2003.

2. The medical evidence is sufficient to show that coronary artery disease, respiratory problems, speech impairment secondary to perforated palate, dysthymia, generalized anxiety disorder, and borderline intellectual functioning are "severe impairments," as the term is defined in the regulations. However, the claimant does not have an impairment, or combination of impairments, that meets or equals any section of the Listing of Impairments found at Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's assertions concerning [his] impairment[s] are not substantiated by the total evidence of record and not credible.

4. The combination of the claimant's impairments results in the following residual functional capacity: he is limited to simple, routine work in a low stress, supervised environment that does not involve interaction with the public, "team-type" interaction with co-workers, or verbal communication; he cannot lift or carry more than 20 pounds occasionally and 10 pounds frequently; he cannot stand and/or walk over 6 hours in an 8 hour workday; and he must work in an environment free from poor ventilation, dust, flumes, odors, and extremes of humidity and temperature.

5. The claimant has not worked in the vocationally relevant past.

6. The claimant was 49 years old as of his amended alleged disability onset date and he is currently 51 years old.

7. The claimant has graduated from high school.

8. The claimant does not have any acquired work skills.

9. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Rules 202.20 and 202.13, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

10. Although the claimant's additional non-exertional limitations do not allow him to perform the full range of light work, using the above-

>> cited rule as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.

> 11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

On May 8, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on June 6, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that the ALJ erred in failing to comply with the treating physician's rule. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

On June 5, 2000, Dr. Al Harley, a psychiatrist, examined Plaintiff. Plaintiff alleged that he was disabled because of bad nerves, leg pains, problems breathing, turbulent sleep, and variable concentration. Dr. Harley found that Plaintiff's memory was intact, his fund of information was good, his tempo was good, his rhythm was spontaneous, and his organization was good. He opined

that Plaintiff had dysthymic disorder and was mildly impaired in his ability to relate with others, mildly restricted in his daily activities, and mildly constricted in his thought processes. Tr. 121-122.

On October 2, 2003, Dr. Elizabeth Dickinson treated Plaintiff for a severe nosebleed. Dr. Dickinson noted that Plaintiff sustained severe burn injuries in 1985, including injury to his oral and nasal mucosa. Plaintiff claimed that he was able to return to work until he developed complications in July 2000. He reported trouble eating, drinking, and speaking. Plaintiff stated that he had not been able to control his speech impediment and suffered depression. Dr. Dickinson noted that Plaintiff's speech was extremely dysarthric, he had a one to one-and-one-half centimeter defect in his soft palate through the nasal cavity, he had uncontrolled secretions in his nose, he was visibly agitated, and he was mildly anxious. Tr. 123-125.

On October 9, 2003, Dr. Anthony Carraway examined Plaintiff. Tr. 127-130. He noted that Plaintiff had a speech impediment. Plaintiff told Dr. Carraway that he was always worried, he sometimes cried, and his motivation was decreased. He denied suicidal or homicidal thoughts, psychotic symptoms, and manic symptoms. Dr. Carraway assessed chronic anxiety symptoms consistent with generalized anxiety disorder and chronic depression. He noted mild impairment of Plaintiff's short-term and immediate memory and thought Plaintiff would benefit from treatment with antidepressant medication.

Plaintiff was treated at Sandhills Medical Foundation ("Sandhills") beginning in December 2003 for various ailments, including anxiety, depression, knee pain, a perforated palate, chronic bronchitis, lower back pain, and coronary artery disease. Tr. 131-137, 292-306, 308-309. On December 4, 2003, Plaintiff complained of bad nerves, depression, sinus problems, and heartburn.

He was assessed with lower back pain, anxiety, and sinus congestion. Plaintiff was referred for an evaluation for heart blockage. Tr. 123-134.

Plaintiff was treated at the South Carolina Heart Center beginning in December 2003. Tr. 138-154, 217-228, 307. On December 23, 2003, Plaintiff was examined for complaints of chest pain with radiation to his left arm, dizziness, and shortness of breath. An echocardiogram and a nuclear stress test were ordered. Tr. 143-144. The nuclear stress test revealed ischemia in the interior apical region and inferior basilar region. Tr. 142. Plaintiff underwent cardiac catheterization which revealed single vessel coronary artery disease of the large ramus intermedius artery. Placement of a stent was recommended. Tr. 139-140, 149-152, 229-282.

On June 14, 2004, Plaintiff returned to Sandhills, complaining of sleep problems. He was assessed with anxiety. Tr. 301.

A stent was placed in Plaintiff's artery during July 2004. See Tr. 289, 300, 307. There are no records of any further medical treatment at South Carolina Heart Center after that time.

On July 13, 2004, Plaintiff was treated at Sandhills. He complained of swelling in his left leg. His current medications were continued. Tr. 300.

On July 28, 2004, Plaintiff was examined by Dr. Avie Rainwater, a psychologist, at the request of his attorney. Dr. Rainwater administered testing which revealed that Plaintiff had a Verbal IQ of 78, Performance IQ of 72, and Full Scale IQ of 73. His impression was that Plaintiff's overall level of functioning was in the borderline intellectual functioning range and that Plaintiff's cognitive capacity and speech impairment made it unlikely that Plaintiff would be unable to sustain meaningful employment. Tr. 285-287.

On August 10, 2004, Plaintiff returned to Sandhills with complaints of lower back pain caused by a motor vehicle accident, poor energy, and sometimes having poor sleep. Plaintiff denied a depressed mood. X-rays revealed changes of degenerative disc disease and osteoarthritis. He was assessed with lower back pain. Tr. 299, 306. On October 8, 2004, Plaintiff complained of problems with his heart and asked for a letter stating he could not work. He was assessed with coronary artery disease, chronic bronchitis, and a perforated palate. His then current medications were continued. Tr. 298. Dr. Karen Reynolds wrote a letter stating that Plaintiff's conditions rendered him unable to work. Tr. 309. In December 2004, Plaintiff complained of pain and swelling in his lower left leg. Tr. 297. In March 24, 2005, he requested surgical repair of his palate and a Nicotrol inhaler. Tr. 296.

On March 27, 2005, Plaintiff was examined by Dr. Amil Om, a cardiologist with Pee Dee Cardiologist Associates. Plaintiff reported he used a walker, he denied chest pain or shortness of breath, and claimed he was not able to do much. Dr. Om reported that Plaintiff's symptoms were significant for dyspnea, sinus problems, joint pain, depression, and unstable gait. Tr. 289. Cardiac examination revealed regular rate and rhythm. Plaintiff's lungs had decreased air entry. Dr. Om recommended that Plaintiff undergo a stress test. Tr. 289-290. On July 28, 2005, Dr. Om noted that the stress test, done on May 30, 2005, was normal with no ischemia and an ejection fraction of 53 percent. Dr. Om recommended that Plaintiff return only on a per needed basis. Tr. 288.

On July 27, 2005, Carol Ferrence, a nurse practitioner at the South Carolina Heart Center, wrote that Plaintiff had undergone placement of a stent in July 2004 and had a history of asthmatic bronchitis. Tr. 307. On September 22, 2005, Beth Branham, a licensed mental health worker at

Sandhills, stated that Plaintiff was being treated for his physical and psychological problems. She wrote:

> [Plaintiff] suffers from moderate to severe depression as well as anxiety....He often suffers from anxiety that makes it difficult to impossible to speak to others and function in his daily life. It is my opinion that Mr. Atkinson will need to have continued therapy for an indeterminate period of time.

Tr. 308.

Plaintiff was examined at Sandhills on August 1, 2005, at which time he denied a depressed mood, but complained of anxiety. Klonopin was prescribed. Tr. 294. Plaintiff complained of a swollen knee on September 20, 2005. Tr. 293. An x-ray showed no abnormality. Tr. 305.

On November 8, 2005, FNP Ferrence wrote that Plaintiff had episodes of fatigue and weakness with exertion associated with episodes of chest discomfort and dyspnea which placed him in a Class III functional capacity.[1] Tr. 310. Dr. Epps signed a letter with similar wording on the same date. Tr. 311.

A. Substantial Evidence

The ALJ's decision that Plaintiff could perform a range of light work despite his impairments is supported by substantial evidence. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

---

[1] Functional Class III is applied to "[p]atients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea, or anginal pain." See Sellers v. Heckler, 590 F.Supp. 1141, 1143 n. 1 (D.C.N.Y. 1984).

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Although Plaintiff suffers from a cardiac problem, he was treated by medical personnel at South Carolina Heart Center and a stent was placed in one of his arteries.  See Tr. 300.  The administrative record contains no treatment notes from the South Carolina Heart Center after placement of the stent.  Plaintiff was followed up at Sandhills, where records do not show any significant symptoms of CAD.  In May 2005, Dr. Om's examination revealed a regular heart rate and rhythm.  Tr. 289.  A stress test was normal and the test revealed no ischemia and an ejection fraction of 53%.  Tr. 288.

Plaintiff also suffered from respiratory problems.  Treatment notes from December 2003 revealed sinus drainage, wheezing, and shortness of breath.  An x-ray was suggestive of chronic obstructive pulmonary disease.  Tr. 132, 135.  An examination in May 2005 showed decreased airway entry.  Tr. 290.  Other examinations, however, revealed little or no complaints of respiratory problems.

Although Plaintiff suffers from a speech impediment, Plaintiff continued to work as a machine operator after being injured in 1985.  See Tr. 16, 123.  Dr. Dickinson noted in October 2003, that with the exception of the speech impediment and hole in Plaintiff's oral cavity, the examination of Plaintiff was normal.  See Tr. 124-125.  The ALJ also noted that while Plaintiff's perforated palate caused him some difficulties, he was able to verbally communicate and perform many activities of daily living.  Tr. 19.  In an April 20, 2004 report of contact, it was noted that

Plaintiff stuttered initially, but after a few minutes he was able to be understood without repeating himself and had no difficulty providing information. Tr. 103.

Plaintiff also suffered from mental impairments of depression and anxiety. Dr. Carraway, who examined Plaintiff in October 2003, opined that Plaintiff had some minor limitations including mild concentration and memory problems and opined that Plaintiff would benefit from medication. Tr. 129. Dr. Harley, in June 2000, assessed Plaintiff with mild mental impairments. Tr. 122. The ALJ discounted Dr. Rainwater's opinion that Plaintiff's cognitive capacity and speech impairments made it unlikely that Plaintiff would be unable to sustain meaningful employment because Dr. Rainwater only examined Plaintiff on one occasion and did not treat Plaintiff. The ALJ also noted that Dr. Rainwater's opinion was inconsistent with assessments by Dr. Harley and Dr. Carraway. Tr. 19. Further, the ALJ noted Plaintiff's lack of hospitalizations or treatment by mental health specialists. Tr. 16.

The ALJ's determination that Plaintiff had the physical residual functional capacity ("RFC") to perform at least a limited range of light work is also supported by the findings of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On October 14, 2003, Dr. Richard Weymouth, a State agency physician, opined that Plaintiff did not have any exertional, postural, manipulative, visual, or environmental limitations. Dr. Weymouth noted that Plaintiff had limitations in his ability to speak and should avoid prolonged public speaking. Tr. 210-216.

On April 13, 2004, another State agency physician reviewed Plaintiff's medical records and assessed his physical RFC. This physician opined that Plaintiff retained the ability to lift, carry, push, and pull twenty-five pounds frequently and fifty pounds occasionally, stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 160. He did not think Plaintiff had any postural, manipulative, visual, or environmental limitations. Limitations on Plaintiff's ability to speak were also noted. Tr. 160-166.

On October 31, 2003, Dr. Manhal Wieland, a State agency psychologist, reviewed Plaintiff's medical records and assessed Plaintiff's mental RFC. Tr. 191-208. Dr. Wieland noted that Plaintiff had an affective disorder and a depressive disorder. He thought that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. Tr. 205. Dr. Wieland completed a Mental RFC Assessment in which he found that Plaintiff was not significantly limited in most areas. He opined, however, that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; complete a normal workweek without interruptions; interact appropriately with the general public; and to accept instructions and receive criticism from supervisors. Dr. Wieland thought Plaintiff would be able to attend and perform simple tasks for two hours without supervision; would miss an occasional day of work due to his mental condition; would function better in a slower paced, lower stress work environment; and might find work with the general public stressful. Tr. 191-193.

On April 20, 2004, Dr. Judith Von, a State agency psychologist, reviewed Plaintiff's medical records and assessed his mental RFC. Tr. 167-186. Dr. Von noted that Plaintiff had an affective disorder and a depressive disorder and opined that Plaintiff had mild restrictions in his activities of

daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. Tr. 167, 177. She also completed a Mental RFC Assessment in which she found that Plaintiff was not significantly limited in most areas. Dr. Von opined that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workweek without interruptions; interact appropriately with the general public; and to accept instructions and receive criticism from supervisors. Tr. 181-182.

B.    Treating Physician

Plaintiff alleges that the ALJ erred in evaluating the opinions of two of his treating physicians, Dr. William B. Epps, a cardiologist, and Dr. Karen Reynolds, a family practitioner. On November 8, 2005, Dr. Epps wrote:

> James Atkinson is a patient here at South Carolina Heart Center with a diagnosis of Coronary Artery Disease. He underwent placement of a Cypher stent in July of 2004 to his Ramus Intermedius Artery to an obstructive lesion in that artery. He also has a history of asthmatic bronchitis.
>
> He continues to suffer with episodes of fatigue and weakness with exertion associated with episodes of chest discomfort and dyspnea which would place him in a Class III Functional Capacity according to the New York Heart Association Nomenclature and Criteria for Diagnosis of Heart Disease.

Tr. 311. On October 8, 2004, Dr. Reynolds (a family practitioner with Sandhills) wrote:

> Mr. Atkinson is a patient under my care. He has a diagnosis of symptomatic coronary artery disease, chronic asthmatic bronchitis and perforated palate secondary to a burn. His conditions produce ongoing symptoms that render him unable to work. His disability is permanent and total in my opinion.

Tr. 309.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.

11

Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount the opinions of Dr. Epps and Dr. Reynolds is supported by substantial evidence. The ALJ discounted Dr. Reynold's opinion because it was not consistent with the medical record. Medical records from Dr. Om (cardiologist) after Dr. Reynolds rendered her opinion of disability indicated that stent placement was successful. A May 2005 EKG and stress test do not support Dr. Reynold's opinion. Medical evidence revealed that Plaintiff's asthmatic bronchitis was controlled with medications. See Tr. 298. As noted above, Plaintiff's perforated plate caused him some difficulties, but he was able to verbally communicate. Plaintiff was able to communicate with Dr. Harley, Dr. Dickinson, and Dr. Carraway. Tr. 121-125, 127-130.

The ALJ gave Dr. Epps' opinion little weight because it was not supported by the evidence in the record as a whole. See Tr. 20. As noted above, the EKG and stress test in May 2005 and examination notes from Dr. Om do not support Dr. Epps' opinion. The ALJ also noted that Plaintiff's activities of daily living were inconsistent with Dr. Epps' opinion. In an April 20, 2004 report of contact, Plaintiff stated that he did not do much cleaning, but he could fix himself something to eat, shopped for groceries once a month, and drove when he needed to do so. Tr. 103. Plaintiff reported to Dr. Harley that he was able to walk, cook, shop, and go to church. Tr. 121. Plaintiff reported to Dr. Carraway that he watched TV, had friends come over, cooked some, and kept his place looking okay. Tr. 128. At the hearing, Plaintiff stated that he drove four or five hours a week, did housework, and went shopping about two times a month. Tr. 317, 325.

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

          Respectfully submitted,

          s/Joseph R. McCrorey
          United States Magistrate Judge

June 18, 2007
Columbia, South Carolina